UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

|  |  |  |
|---|---|---|
| JULIUS MOSLEY and MOSLEY MOTEL OF CLEVELAND, INC. | : | CASE NO.1:13-CV-1646 |
|  | : |  |
| Plaintiffs, | : |  |
|  | : |  |
| v. | : | OPINION & ORDER |
|  | : | [Resolving Doc. No. 12] |
| CITY OF WICKLIFFE, OHIO, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE[1/]:

Plaintiffs Julius Mosley and Mosley Motel of Cleveland sue Defendant City of Wickliffe, Ohio ("Wickliffe") for violating Plaintiffs' Constitutional rights.[2/] Plaintiffs say Wickliffe violated Plaintiffs' rights by passing Wickliffe City Ordinance 2009-49, which regulated nightclubs operating in the city of Wickliffe.[3/]

Plaintiffs are also involved in a substantially similar case pending in this Court, *Miller et al. v. City of Wickliffe, Ohio* ("*Miller*").[4/] Five of the claims overlap: claims under § 1983 (Counts 1, 6), a claim for injunctive relief from application of 2009-49 (Count 2), a claim under 42 U.S.C. § 2000a (Count 5), and a claim under 28 U.S.C. §§ 1981, 1982 (Count 7).

However, unlike in *Miller*, Plaintiffs here also allege per se and as applied violations of the takings clause (Counts 3, 4).

---

[1/] Judge Wells presided over this case until October 2015. On her retirement, this Court took the case under General Order 2015-12. *See* non-document docket entry dated October 6, 2015.
[2/] Doc. 1.
[3/] *Id.*
[4/] *See* 1:12-cv-01248 (N.D. Ohio). This case is distinguished by its four additional plaintiffs besides Mosley and the Mosley Motel.

Case No.1:13-CV-1646
Gwin, J.

Defendant moves for summary judgment.[5] Defendant moves as to both the claims that are at issue in *Miller* and the unique takings clause claims. On the first set of claims, Defendant raises substantially the same arguments they did in their *Miller* briefing.[6] On the takings clause claims, Defendant argues that the claims are not ripe for review by a federal court because Plaintiffs have not exhausted state compensation procedures.[7]

On December 11, 2015, the Court ordered supplemental briefing on the issue of Article III Standing.[8]

For the following reasons, the Court **GRANTS** Defendant's motion for summary judgment as to the taking clause claims, and **DENIES** as moot Defendant's motion as to the other constitutional violations. The Court **DISMISSES** the remaining claims for lack of standing.

### I. Background

**Property at 28500 Euclid Avenue, Wickliffe, Ohio**

Plaintiff Mosley Motel of Cleveland is an Ohio corporation with its primary place of business at 28500 Euclid Avenue, Wickliffe, Ohio.[9] Plaintiff Julius Mosley is the owner of the Mosley Motel.[10]

---

[5] Doc. 12.

[6] *Compare id. with Miller*, Doc. 35.

[7] Plaintiffs did file an opposition brief. Doc. 14. However, Plaintiffs' opposition brief is, by all appearances, mis-filed in this case. It relates exclusively to Wickliffe Ordinance 521.10, which is not at issue in this litigation. Ordinance 521.10 is not even mentioned in the complaint. Defendant points this out in its reply brief. Doc. 15. Nevertheless, Plaintiffs have not re-filed a substantive opposition.

[8] Non-document entry dated December 11, 2015. Similar briefing was ordered in the *Miller* litigation. *See Miller*, non-document entry dated November 2, 2015. The parties submitted the briefing. Doc. 16; Doc. 17.

[9] Doc. 1 at ¶ 1.

[10] *Id.* at ¶ 2.

Case No.1:13-CV-1646
Gwin, J.

Plaintiffs purchased the property at 28500 Euclid Avenue for $2 million in 2007.[11] Plaintiffs also allege that they paid a $400,000 tax bill and spent $600,000 in renovations and repairs.[12]

Dan Miller, plaintiff in the *Miller* suit, entered into a lease with the Mosley Motel in May 2009.[13] Plaintiffs allege that they only entered into the lease on the understanding that the location did not have zoning restrictions that would limit Miller's ability to open his nightclub, Suede Lounge.[14]

As described and discussed at length in the summary judgment opinion this Court filed in the *Miller* litigation,[15] Miller applied for a liquor license from the Ohio Department of Commerce, Liquor Control Division ("the Liquor Control Division").[16] However, several local religious organizations objected to Miller's application.[17] By letter dated October 30, 2009, the Liquor Control Division denied Miller's liquor license application.[18] The rejection letter notified Plaintiff Miller of his right to appeal the rejection to the Ohio Liquor Control Commission.[19] Miller did not appeal the Liquor Control Division's permit denial.

On September 10, 2009, Miller applied for a temporary occupancy permit for 28500 Euclid

---

[11] *Id.* at ¶ 20.
[12] *Id.* at ¶¶ 22-23.
[13] *Id.* at ¶ 40.
[14] *Id.*
[15] *Miller*, Doc. 44.
[16] Doc. 1 at ¶¶ 44-45.
[17] *Id.* at ¶ 56.
[18] *Id.* at ¶ 74.  The Division's grounds for rejection were: 1) Plaintiff Milller's business would "substantially and adversely affect or interfere with the normal, orderly conduct of the affairs of [the organizations]"; 2) given the location of Miller's business, "substantial interference with public decency, sobriety, peace, or good order would result from the issuance of the permit"; and 3) "[the Liquor Control] Division also denies and rejects the new application as authorized or required by law." Doc. 12-1 at 1-2 (citing R.C. §4301.10(A)(2); R.C. §4303.292(B)(1); O.A.C. §4301:1-1-12(B)).
[19] *Id.* at 2.

Case No.1:13-CV-1646
Gwin, J.

Avenue in Wickliffe, Ohio.[20] By letter dated September 17, 2009, Wickliffe rejected the application because the building did not have enough paved parking spaces to satisfy zoning requirements.[21]

On September 28, 2009, Wickliffe's City Council convened and passed Ordinance 2009-49.[22] That ordinance generally requires a permit to operate a "nightclub" in Wickliffe. Ordinance 2009-49 also prevents a nightclub from opening within 500 feet of several types of organizations, including schools, churches, and other nightclubs.[23]

As of September 28, 2009, Miller did not have a liquor license or occupancy permit for 28500 Euclid Avenue. He also did not apply for a permit to operate a nightclub under 2009-49.

Due to the failure to issue a liquor permit, the commencement date of the lease between

---

[20] Doc. 1 at ¶ 59.
[21] *Id.* at ¶ 65.
[22] *Id.* at ¶ 66.
[23] The challenged portions of 2009-49 read:

**747.02 DEFINITIONS**
(a) 'Nightclub' means a place operated for a profit, which is open to the public and provides the opportunity to engage in social activities such as dancing; the enjoyment of live or prerecorded music; the serving of food and beverages, all of which are provided for a consideration that may be included in a cover charge or included in the price of the food or beverage.
. . .
**747.03 NIGHTCLUB PERMIT REQUIRED**
It is unlawful for any person to own, lease, operate, manage, or maintain a nightclub in the City without first obtaining a nightclub permit from the City as set forth in this chapter.
. . .
**747.09 ACTION ON APPLICATION**
. . .
(b) This application [for a nightclub permit] will be denied if:
. . .
(11) The location of the nightclub is within five hundred feet from the boundaries of a parcel of real estate having situated on it a school, church, library, public park, tavern, bar, adult cabaret, or another nightclub;
. . .
**747.99 PENALTY**
(a) Whoever [operates] a nightclub without first having obtained a permit from the City is guilty of a misdemeanor of the first degree.

Doc. 1-4 at 1–4.

Case No.1:13-CV-1646
Gwin, J.

Plaintiffs and Miller did not activate.[24] Plaintiffs allege that they have attempted to mitigate damages caused by the inability to open Suede Nightclub. Plaintiffs sought out third parties who were interested in buying out Miller's lease. Plaintiffs allege that these deals were not completed because of the on-going dispute over zoning.[25] Plaintiffs also tried to sell the property. Plaintiffs allege that "Mr. Miller was informed by a prominent real estate broker that due to the multiple legal issues with the City of Wickliffe, the buyer would not list the property for sale."[26] Plaintiffs further allege that they have received offers of up to $1.75 million, but that these were inadequate, especially in light of the paid tax bill and renovations.[27] In their supplemental briefing on standing, Plaintiffs now state that they have sold the property for $675,000.[28]

### *Miller* case

Plaintiffs filed this seven-count lawsuit in July 2013.[29] In May 2012, Plaintiffs along with Miller, Suede Nights LLC, and two others, filed a near-identical lawsuit.[30] Plaintiffs were ordered to show cause why this case was distinct from the earlier-filed *Miller* litigation.[31] Plaintiffs admit the overlap as to Counts 1, 2, 5, 6, 7.[32] Plaintiffs continued that "where the case at bar differs is . . . Counts 3 and 4 of the complaint. These facts and causes of action are all related to and grounded

---

[24] *Id.* at ¶ 75.
[25] *Id.* at ¶¶ 78-81.
[26] *Id.* at ¶ 82.
[27] *Id.* at ¶¶ 92-9.
[28] Doc. 16 at 5.
[29] *Miller*, Doc. 1.
[30] *Compare id.* at ¶¶ 27-88 *with Miller*, Doc. 24 at ¶¶ 12-72. *Compare* Doc. 1, at ¶¶ 95-109, 138-163 (Counts I, II, V-VII) *with* Doc. 24 at ¶¶ 73-113 (Counts I-V).
[31] Doc. 6.
[32] Doc 7 at 2.

Case No.1:13-CV-1646
Gwin, J.

in the takings clause of the U.S. Constitution."[33/] The presiding judge at that time consolidated these cases on September 13, 2013.[34/]  Plaintiffs Mosely and Mosley Motel later moved to sever the actions in August 2014.[35/]

At this time the instant case the *Miller* litigation are not consolidated.  However, five of the seven counts in this case are identical to those in the *Miller* litigation, and based upon the same factual predicate.

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[36/] The moving party must first demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[37/] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[38/] The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[39/] But the Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[40/]

To litigate a claim in federal court, a plaintiff must meet Article III standing.  A plaintiff must

---

[33/] *Id.*

[34/] See *Miller*, Doc. 26; non-document entry dated September 13, 2013.

[35/] *Miller*, Doc. 29.  Plaintiffs were motivated to sever the cases by a lawsuit they filed in 2014 against the City of Wickliffe and the Wickliffe Mayor. See *Mosley v.City of Wickliffe*, 14-cv-934 (N.D. Ohio).

[36/] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).

[37/] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[38/] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[39/] *Id.* at 586.

[40/] *Killion*, 761 F.3d at 580 (internal citation omitted).

Case No.1:13-CV-1646
Gwin, J.

demonstrate that he has suffered an injury in fact which is concrete and particularized; there must be a causal connection between the injury and the conduct complained of; and it must be likely, as opposed to merely speculative that the injury will be redressed by a favorable decision.[41]

### III. Discussion

**Standing**

As in the *Miller* litigation, Plaintiffs' claims as to constitutional violations caused by Ordinance 2009-49 are dismissed for lack of standing.

Plaintiff Mosley Motel of Cleveland is the landlord for Miller and the other third-parties to this lawsuit who wished to open a nightclub on the premises. As discussed in the *Miller* opinion, these parties do not have a sufficiently concrete or particularized injury to meet Article III's standing requirements.[42] Plaintiff Mosley Motel of Cleveland, as the mere landlord, is one step further removed and *a fortiori* cannot demonstrate constitutional standing based on the same set of facts.

Plaintiff Julius Mosley maintains that he has suffered a unique injury in his role as a shareholder to the Mosley Motel.[43] This argument also fails. Plaintiffs rely on a single case, in which a district court found standing for the shareholder of an adult entertainment business. In that case, the business was actually denied the ability to operate because of a local ordinance.[44] Mosley, by contrast, is a shareholder in an entity that is the landlord to a second entity that has not yet even applied for the permit to operate. This is not grounds for standing.

---

[41] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

[42] *Miller*, Doc. 44.

[43] The Court sets aside Plaintiffs' arguments that standing is based on the violations of Ordinance 521.10, which, again, is not at issue in this litigation.

[44] Doc. 16 at 9-10 (citing *Christy v. Servitto*, 699 F. Supp. 618 (E.D. Mich. 1988)).

Case No.1:13-CV-1646
Gwin, J.

The Court **DISMISSES** Counts 1, 2, 5, 6 and 7 of the complaint for lack of standing.

**Takings Clause**

Plaintiffs do have standing to pursue their takings claims.  They properly allege an injury: the decreased value of their property.  This injury persists regardless of whether or not they ever applied for a permit under 2009-49.  Plaintiffs can show causation: they have persuasively alleged that it is the Defendant's actions that caused the decrease in value.  And the injury could be redressed through further action by Defendant.  Plaintiffs have standing to pursue Counts 3 and 4.  Nevertheless, the Court **GRANTS** Defendant's motion for summary judgment as to these claims, because they are not yet ripe for review.

A takings claim is not ripe for review unless a property owner is denied just compensation.[45]

Ohio law provides that a government actor seeking to take property is under a duty to bring an appropriation proceeding.  If a landowner feels his property is being subjected to a takings without proper proceedings, he must bring a mandamus action to seek compensation. "Mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged."[46]

The Sixth Circuit has held that Ohio's writ of mandamus procedure is the proper mechanism for pursing just compensation in the case of a regulatory taking.[47]  Thus, an Ohio

---

[45] *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985).
[46] *State ex rel. Duncan v. Middlefield*, 898 N.E.2d 952, 956 (Ohio 2008).
[47] *Coles v. Granville*, 448 F.3d 853, 862 (6th Cir. 2006) (citing *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031 (6th Cir. 1992)).

Case No.1:13-CV-1646
Gwin, J.

takings claim is not ripe until a property owner has been denied just compensation after pursing the mandamus action.

Plaintiffs do not allege that they pursued a state mandamus action to seek just compensation for the alleged regulatory taking of the property.  As a result, their takings claims are not yet ripe.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** Defendant's motion for summary judgment, **DENIES IN PART** Defendant's motion as moot, and **DISMISSES** Counts 1, 2, 5, 6 and 7 counts of Plaintiffs' first amended complaint for lack of standing.

IT IS SO ORDERED.

Dated: December 21, 2015                         s/      *James S. Gwin*
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE